UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIELLE KIMBLE | : | CIVIL ACTION NO. |
|     Plaintiff, | : | _____ |
| | : | |
| VS. | : | |
| | : | |
| IHG MANAGEMENT MARYLAND LLC | : | |
| (d/b/a EVEN HOTEL) | : | |
|     Defendant. | : | OCTOBER 18, 2021 |

## COMPLAINT

### INTRODUCTION

1. This is an action to redress the discriminatory and unlawful treatment suffered by the Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. (hereinafter "Title VII") and the common law of the State of Connecticut.

### JURISDICTION

2. Jurisdiction of this Court is invoked under the provisions of 28 U.S.C. § 1331. Supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367.

3. Plaintiff (hereinafter "Ms. Kimble") filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") on November 24, 2020, against the Defendant (hereinafter "EVEN HOTEL").

4. Plaintiff received a release of jurisdiction notice from the EEOC on October 4, 2021. This action is brought within 90 days of the receipt of such notice.

### PARTIES

5. During all times relevant to this complaint, Ms. Kimble resided and worked in the State of Connecticut.

6. During all times relevant to this complaint, EVEN HOTEL was authorized to conduct business in the State of Connecticut.

7. EVEN HOTEL is engaged in the business of hotel services and has a location at 426 Main Avenue, Norwalk, Connecticut.

8. EVEN HOTEL has more than fifteen employees.

9. Ms. Kimble, an African-American woman, was employed by EVEN HOTEL as a manager.

**FACTS**

10. In 2019, Ms. Kimble together with her husband and two young children moved to Connecticut to be closer to the physicians treating her husband. Ms Kimble's husband was severely ill and undergoing treatment for sickle cell disease; he subsequently died in October 2019.

11. After moving to Connecticut, on April 17, 2019, Ms. Kimble began working for EVEN HOTEL as a Night Auditor and less than one month later, she was transferred to the Sales Department to work as a Sales Coordinator.

12. Ms. Kimble proved herself to be an exceptional employee and on or about December 2019, she became the Hotel Coordinator and finally on or about June 6, 2020, Ms. Kimble was promoted to Operations Manager at the Hotel. In this role, she reported directly to General Manager Claudio Pereira.

13. On October 26, 2020, approximately only four months after her most recent promotion, however, Ms. Kimble was constructively discharged by EVEN HOTEL when

she was compelled to "resign" due to the intolerable working conditions created by Mr. Edward Melfi, also a manager at EVEN HOTEL.

14.     Mr. Melfi has been employed (and remains employed) at the Hotel since May 2014 and also reports to Mr. Pereira.

15.     Ms. Kimble's problems arose during the last eight moths of her employment when she became progressively the object of an extremely hostile work environment. The underpinnings of the hostilities were Mr. Melfi's words and conduct regarding women and African-Americans.

16.     On numerous occasions during her employment with EVEN HOTEL, Mr. Melfi would make highly inappropriate sexual comments to Ms. Kimble.

17.     On occasions Mr. Melfi asked highly inappropriate questions about Ms. Kimble's sex life including asking if she "sq….." when having sex.

18.     On numerous occasions Mr. Melfi he would stare and make growling noises when Ms. Kimble wore particular clothes.

19.     On numerous occasion he referred to Ms. Kimble as Divaliscious.

20.     On one occasion, Mr. Melfi placed his hands on her neck and started to seemingly massage Ms. Kimble while whispering, "you seem tense, let me loosen you up."

21.     Much of this outrageous behavior was carried out in front of others, which was extremely embarrassing and demeaning to Ms. Kimble. This conduct's severity and offensiveness was aggravated by the fact that Ms. Kimble's husband had recently passed.

22. Mr. Melfi conducted himself in a similar manner towards Ms. Kimble's female colleagues, which further aggravated the hostile environment.

23. Mr. Melfi made sexual comments to other female employees in front of Ms. Kimble and while outside her presence, including one employee named Briana, who also complained to her manager (Mr. Pereira) about Melfi's behavior.

24. Ms. Kimble's concerns about Mr. Melfi were further heighten by her observations of his extremely vulgar and physically violent behavior towards a female guest of EVEN HOTEL. Albeit the guest was seemingly intoxicated, Mr. Melfi told the female guest "fuck you" and then violently pushed her out of the premises.

25. Additionally, on several occasions Ms. Kimble also found Mr. Melfi kissing and touching a female employees form housekeeping while in a guest room.

26. These instances of misconduct were reported to Ms. Kimble's supervisor, Mr. Claudio Pereira, several times, who ostensibly understood her predicament but did nothing to rectify the issues. Mr. Pereira also personally witnessed Mr. Melfi's misconduct.

27. Mr. Melfi's misconduct did not stop with sexual harassment, but also concerned race.

28. Several events demonstrate discriminatory animus toward African-Americans. The most notable are as follows.

29. During a meeting which included several managers Mr. Mefli interrupted a story Ms. Kimble was recounting regarding the Black Lives Matter movement and among other things, shouted, "MOVE OUT OF THE WAY NIGGERS."

30. Then during an lunch outing, after entering a restaurant, Mr. Melfi directed Ms. Kimble and another African-American employee (Aisha La Chapelle) to sit in the back "where they belonged." This statement was made in front of Mr. Pereira.

31. The group of employees had just entered a restaurant named "Mediterraneo" to celebrate the manager's successful handling of COVID 19 issues at EVEN HOTEL.

32. Mr. Melfi made it a point to *restate* his comment and, in the presence of all managers and people present, stated that Ms. Kimble and the other African-American employee should go sit with "your people," as he pointed to the back of a restaurant where a black couple was sitting. This statement was made in front of Mr. Pereira.

33. Mr. Melfi has on multiple occasions made inappropriate sexual-racial comments about employees' African-American boyfriends, including derogatory comments by linking terms like "black flavor," "your black boyfriends" to inappropriate physical connotations.

34. During the Black Lives Matter movement, especially, Mr. Melfi's use of the word "black" became incessant, applying it to seemingly irrelevant situations, ostensibly, just so to use the word in front of African-American employees to provoke a negative reaction.

35. Mr. Melfi also made racial comments to other female employees in front of Ms. Kimble and while outside her presence.

36. Again, Ms. Kimble complained about this conduct to her direct supervisor, Mr. Pereira but her complaints were not investigated or rectified.

37. Notwithstanding Mr. Melfi's misconduct and Ms. Kimble's complaints regarding the same, in October 2020, Mr. Melfi was promoted to Chief Engineer and placed in charge of Housekeeping; he is now the supervisor of an all-female staff.

38. To make matters worse such a position would necessitate a very close working relationship between Ms. Kimble and Mr. Melfi.

39. On very same day she learned of Mr. Melfi's promotion, a perplexed and extremely worried Ms. Kimble discussed this promotion and her serious concerns with Mr. Pereira.

40. As he had done before, Mr. Pereira summarily explained that there was nothing he could do about it.

41. Ms. Kimble then explained that she had no choice but to resign since Mr. Melfi had been promoted to a position which would require her to work more closely with him; she explained that this would worsen the existing problems.  Again, Mr. Pereira simply acquiesced.

42. Ms. Kimble's working environment had become so intolerable leaving her one option.  A recent widower and just newly promoted single mother of two young children, with no other employment prospects, with no family in Connecticut and living next to the hotel where she worked was forced to resign in the middle of a pandemic because EVEN HOTEL chose to cpondone Mr. Melfi's conduct.

43. Indicative of Mr. Melfi's discriminatory animus towards African-American persons and women are numerous posts found on Mr. Melfi's Facebook page, including posts about Mexicans, President Obama, Mike Tyson, the Black Lives Movement, women and knives.

**FIRST COUNT**: <u>Hostile Work Environment based on race under TITLE VII (racial harassment)</u>

1-44.   Paragraphs 1-43 are hereby incorporated by reference and made part of this First Count.

45.   During all times relevant to this complaint, Ms. Kimble was a member of a protected class and qualified for her position.

46.   During all times relevant to this complaint, Mr. Melfi created a hostile work environment by permeating the workplace with continual and serious ridicule and insult directed at Ms. Kimble's race and African-Americans in general.

47.   Mr. Melfi's misconduct was sufficiently pervasive so to alter the conditions of Ms. Kimble's employment to an intolerable level and create an abusive working environment.

48.   During all times relevant to this complaint, Mr. Melfi's misconduct, as described above, was not welcomed.

49.   During all times relevant to this complaint, EVEN HOTEL had actual and constructive notice of Mr. Melfi's misconduct.

50.   Nevertheless, EVEN HOTEL failed to exercise reasonable care to prevent and correct promptly the harassment.

51.   Accordingly, EVEN HOTEL is liable for its agent's violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* with intentional, knowing and, or reckless disregard of that Act's proscriptions.

**SECOND COUNT**: <u>Hostile Work Environment based on sex under TITLE VII (sexual harassment)</u>

1-44.   Paragraphs 1-43 are hereby incorporated by reference and made part of this First Count.

45.   During all times relevant to this complaint, Ms. Kimble was a member of a protected class and qualified for her position.

46.   During all times relevant to this complaint, Mr. Melfi created a hostile work environment by permeating the workplace with continual and serious sexual comments and conduct directed at Ms. Kimble and other female employees.

47.   Mr. Melfi's misconduct was sufficiently pervasive so to alter the conditions of Ms. Kimble's employment to an intolerable level and create an abusive working environment.

48.   During all times relevant to this complaint, Mr. Melfi's misconduct, as described above, was not welcomed.

49.   During all times relevant to this complaint, EVEN HOTEL had actual and constructive notice of Mr. Melfi's misconduct.

50.   Nevertheless, EVEN HOTEL failed to exercise reasonable care to prevent and correct promptly the harassment.

51.   Accordingly, EVEN HOTEL is liable for its agent's violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* with intentional, knowing and, or reckless disregard of that Act's proscriptions.

**THIRD COUNT**: <u>Negligent Supervision</u>

1-44.   Paragraphs 1-30 are hereby incorporated by reference and made part of this Third Count.

45.   For several months EVEN HOTEL had actual and constructive notice of Mr. Melfi's misconduct, as described above.

46.   Notwithstanding such knowledge, EVEN HOTEL did not act to remedy or prevent Mr. Mr. Melfi's misconduct

47.   It was reasonably foreseeable that without supervision by the EVEN HOTEL, such misconduct would continue to harm Ms. Kimble and other employees.

48.   Such lack of supervision caused harm to Ms. Kimble.

WHEREFORE, Plaintiff claims judgment against the Defendant as follows:

1. Back pay and front pay in an amount to be determined by the trier of fact with interest from the date said sum was due;

2. Compensatory damages in an amount to be determined by the trier of fact;

3. Punitive damages in an amount to be determined by the trier of fact;

4. An injunction permanently enjoining Defendants, its officers, agents, employees, successors, assigns and all persons in active concert of participation with them from engaging in any employment practice which discriminates on the basis of sex and race;

5. Attorney's fees and costs of this action; and

6. Such further relief as this Court deems necessary and proper.

THE PLAINTIFF

By/s/Riccardo L. Pate
Riccardo L. Pate, Esq.
155 Post Road East
Westport, CT 06880
(203) 226-9922
Federal Bar No.  ct 15057